# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DIOCESE OF DULUTH,

     Plaintiff,

                                      Case No. 0:17-cv-03254-DWF-LIB

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

     Defendants.

## DIOCESE OF DULUTH RULE 29(a)(2) EXPERT DISCLOSURE

     AND NOW, comes Plaintiff Diocese of Duluth, by and through the undersigned counsel, and

serves its Rule 26(a)(2) Expert Disclosure, as follows:

    A.    **Rule 26(a)(2) Disclosure**

        Dennis R. Connelly
        17 Philip Drive
        Princeton, NJ  08540

     Attached hereto as Exhibit "A" is a true and correct copy of Dennis R. Connelly's report of

February 1, 2018.

Dated:  February 1, 2018                    Respectfully submitted,

                                                      **BLANK ROME LLP**

           By:  /s/ *James R. Murray*
                 James R. Murray (DC #355098)
                 (admitted *pro hac vice*)
                 James S. Carter (DC #479432)
                 (admitted *pro hac vice*)
                 1825 Eye Street NW
                 Washington, DC 20006
                 Telephone: (202) 420-3409
                 Facsimile: (202) 420-2201
                 jmurray@blankrome.com
                 jscarter@BlankRome.com

                 Jared Zola (NY #4232344)
                 (admitted *pro hac vice*)
                 The Chrysler Building
                 405 Lexington Avenue
                  New York, New York 10174
                 Telephone: (212) 885-5209
                 Facsimile: (917) 591-8538
                 jzola@blankrome.com

                 *Counsel for Diocese of the Duluth*

                 **GRAY PLANT MOOTY**
                 **MOOTY & BENNETT, P.A.**

           By:  /s/ *Phillip L. Kunkel*
                 Phillip L. Kunkel (MN #058981)
                 Nicholas N. Nierengarten (MN #079169)
                 Abigail M. McGibbon (MN #0393263)
                 1010 West Germain Street, Suite 500
                 Saint Cloud, MN 56301
                 Telephone: (320) 202-5335
                 Facsimile: (320) 252-4482
                 Phillip.kunkel@gpmlaw.com
                 Nicholas.nierengarten@gpmlaw.com
                 Abigail.mcgibbon@gpmlaw.com

                 *Local Counsel for the Diocese of Duluth*

**EXPERT REPORT**

**by**

Dennis R. Connolly

regarding

*Diocese of Duluth,* Plaintiff

v.

*Liberty Mutual Insurance Company*, et al., Defendants

United States District Court
for the District of Minnesota

Civil Action No.: 0:17-cv-03254-DWF-LIB

February 1, 2018

_____
Dennis R. Connolly

**Introduction**

I, Dennis R. Connolly, was retained by counsel for Diocese of Duluth (Diocese) in connection with the lawsuit titled *Diocese of Duluth v. Liberty Mutual Insurance Company, et al.*, Civil Action No.: 0:17-cv-03254-DWF-LIB.  Counsel for the Diocese asked me to provide expert opinion regarding Liberty Mutual Insurance Company's ("Liberty Mutual") position that commercial general liability insurance policies for which it is responsible in 1967 to 1970, 1970 to 1973, and February to April 1973 include aggregate limits of liability applicable to non-products bodily injury claims.

My overall expertise is in liability insurance and insurance underwriting.  A copy of my *Curriculum Vitae*, including a list of publications I have authored and the expert reports and testimony I have given, is included in Exhibit A.  Some publications, speeches and legislative testimony were lost in the World Trade Center on September 11, 2001.

The Diocese has in its possession insurance documents regarding three historical commercial general liability policies from 1967 to 1970, 1970 to 1973, and February to April 1973, sold to it by Agricultural Insurance Company for which Liberty Mutual is now responsible.  I personally reviewed the Diocese's Second Amended Complaint dated September 29, 2017, the Answer and Counterclaim of Liberty Mutual Insurance Company To The Second Amended Complaint dated October 13, 2017 and the insurance policy documents annexed thereto as exhibits, and certain other insurance policy information regarding Firemen's Insurance Company of Newark, N.J. ("CNA").

<u>Discussion & Opinions</u>

I.      **A Primer On Insurance**[1]

      A.      **What is insurance?**

1.      "Insurance" is a device that protects companies and individuals from having to pay for certain types of harms that they may cause or certain types of damage to property that they may own. In that sense, insurance is a "risk-shifting" and "risk sharing" device, i.e., a device whereby, in exchange for the payment of a set amount of money (known as a "premium"), an insurance company, i.e., the "insurer," agrees to accept the financial risk associated with certain events that may happen in the future.

2.      For example, when one buys automobile liability insurance, he or she is paying the automobile liability insurer an agreed upon sum of money (i.e., a premium) to assume responsibility for damage that the owner of the automobile liability insurance policy (i.e., "the policyholder" or "insured") may cause.  Thus, the owner of the automobile liability policy has, by payment of a premium shifted (from itself to its insurer) the financial risk associated with an accident that results in damage to a third-party.   Without insurance, the automobile owner would bear the financial responsibility for the accident; with insurance, the insurance company bears that responsibility (up to an agreed upon amount, i.e., the limits of the policy).

3.      Additionally, insurance is a "risk-spreading" device, in the sense that insurance companies spread the risk of any particular insured event taking place among multiple insureds and multiple premiums.  For example, the likelihood of any one driver

---

[1] Insurance is, or can be, a very complex topic. This section of my report is intended to assist the trier of fact by, among other things providing an overview of the basic concepts involved in insurance.

having an accident is low; an automobile insurer takes the risk that any one of its insured drivers will have an accident and spreads that risk across all of its insured drivers, each of whom has paid (or has had paid on its behalf) a premium.

4.     Finally, insurance can be viewed as a "risk sharing" device.  For example, there are certain types of risks for which no single insurance company may be interested in accepting sole responsibility.  In those circumstances, a group or "pool" of insurance companies may combine to share the risk (and the premium associated with insuring that risk).  Or, a single company may agree to assume (nominally) the entire risk, but not before it has entered into a secondary insurance market (sometimes referred to as the "reinsurance market") and essentially passed on or pre-sold portions of the risk (for which it, in turn, must pay a premium) to other companies (known as "reinsurers").

**B.     What are the different types of insurance?**

5.     Broadly speaking, there are two major types of insurance:  first-party insurance and third-party insurance.

6.     First-party insurance is insurance which responds to a loss of, or damage to, property that the policyholder itself owns.  A homeowner's insurance policy is an example of first-party insurance.   Such a policy is intended to insure a property owner against various risks of damage to or destruction of the property owner's home as the risk that his/her house is damaged by lightning or is lost in a fire.  In the event that such a loss occurs, the insurance company will compensate the property owner for the cost of repairing or rebuilding the property owner's home (up to the limits of its policy).

7.     Third-party insurance (also known as "liability insurance") is insurance which responds when the policyholder is (alleged) to have caused (or is otherwise

deemed liable for) injury to some third-party or property owned by a third-party.  An automobile liability insurance policy is an example of third-party insurance.  Such a policy is intended to insure the owner of an automobile against various risks associated with the ownership and operation of an automobile, such as the risk that the automobile owner may cause an accident that results in bodily injury to a third-party or damage to property owned by a third-party.  In the event that such a loss occurs, the insurance company will pay for the medical bills and other damages to the third-party for which the automobile owner is legally responsible (up to the limits of its policy).

8.     Another way to broadly categorize insurance is by focusing on the type of insured. Individuals purchase insurance to protect themselves against risks associated with their private lives.  For example, individuals often buy homeowner's insurance, tenant insurance, automobile insurance, life insurance, health insurance, and so on. These types of insurance, i.e., those where the policyholder is an individual, are frequently referred to as "personal lines" of insurance.

9.     Businesses, business owners and religious organizations likewise purchase insurance to protect themselves from risks associated with the operation of their businesses.  For example, many (if not most) businesses purchase one or more of the following types of insurance: property insurance, employee dishonesty/theft insurance, employer liability insurance, commercial general liability insurance and directors and officers liability insurance.  These types of insurance, i.e., those where the policyholder is a business or other commercial enterprise, are frequently referred to as "commercial lines" of insurance.

4

**C.**      **What is the process whereby an insurance policy is purchased?**

10.      Although the process by which specific types of insurance are purchased can vary dramatically, the purchase of nearly every type of insurance involves essentially the same elements.  First, the party who is interested in purchasing insurance typically contacts an insurance professional (typically, an "insurance agent" or an "insurance broker" to assist it in the purchase (sometimes referred to as "the placement") of insurance.  Among other things, the interested party and the insurance professional typically will discuss the type and amount of insurance that the party is interested in purchasing.

11.      At some point, the insurance professional will gather (or ask the interested party to provide) information that will be relevant to any company that may be interested in selling (sometimes referred to as "writing") the type of insurance that the party is interested in purchasing.   Then, the insurance professional will submit that information (often in the form of an "insurance application") to at least one (and often more than one) insurance company for evaluation and - assuming the company is interested in selling the type of insurance that the party is interested in purchasing - quotation of a price for the insurance.  This evaluation is referred to as "insurance underwriting" which is a fancy term for the process whereby an insurance company (i) assesses the likelihood that the risk(s) for which insurance is sought will, in fact, occur, and (ii) if the insurance company is willing to sell the insurance, sets the price that it will charge for the insurance (i.e., the premium).

12.      Once the insurance underwriting has been completed, an insurance company to whom the application has been submitted will indicate to the insurance

5

professional whether it is willing to sell (or "write") the insurance and, if so, at what price (an insurance company that is interested in selling the insurance often will communicate the price at which it will sell, or write, the insurance via "an insurance proposal"). The insurance professional will gather this information and review it with the interested party. The interested party will then determine which - if any - insurance proposal it will accept. At that point the insurance professional may prepare an insurance "binder," which is a piece of paper that is designed to reflect the essential terms of a contract of insurance (i.e., the "insurance policy"), including the premium to which the interested party (now the owner of the insurance policy, or the "policyholder") and the insurance company have agreed.

13.     It is the custom and practice in the insurance industry that the policyholder pays the premium to the insurer at the time the insurance policy is purchased. Often, the premium is paid before the formal insurance policy is even issued (i.e., assembled and delivered to the policyholder or the insurance representative), as the process of assembling and delivering an insurance policy can take a surprisingly long time.

**D.     How do insurance companies make money?**

14.     Insurance companies can make money in several ways.

15.     First, they can make what is known as an "underwriting profit." As part of the "underwriting" process, insurers attempt to separate good risks (i.e., those that, based on the insurance underwriting, are deemed unlikely or less likely to occur) from bad risks (i.e., those that, based on the insurance underwriting, are deemed more likely to occur). Broadly speaking, if – during a given period of time - the total amount of premiums that the insurer receives from its policyholders is greater than the total amount of dollars that

it pays to its policyholders on insurance claims, then the insurer has made what is known in the industry as an "underwriting profit."

16.    Second, insurers make money by investing for their own benefit the premiums that they collect from their policyholders.  This is known as "investment income."  These investments can take various forms, including the purchase of stocks, bonds and other sophisticated financial instruments as well as the purchase of commercial real estate.  The insurers receive revenue from these investments in addition to the revenue they receive from premiums.  Under this business model, an insurance company makes money when the total of its premium and income revenue is greater than the amount that it pays out on claims to its policyholders and other costs.  Thus, an insurance company that limits the amount of claims that it pays to its policyholder can be well-positioned to make money.

17.    Third, an insurance company can resist claims or try to pay less than their full value.

**E.    What is a commercial general liability policy?**

18.    Commercial general liability policies, or "CGL" policies, are a type of commercial, third-party liability insurance that provide coverage during a specified period of time and in a specified amount (known as the "limit of liability").  CGL policies are purchased by most businesses in the United States (from small, privately owned "mom-and-pop" businesses to publicly owned Fortune 500 companies).  Among other things, CGL policies cover companies and other entities for liabilities (including liability for bodily injury or death) arising out of their alleged negligence.

7

19.     Broadly speaking, CGL policies insure against two risks: (1) the risk that the policyholder may be deemed liable or otherwise legally responsible for injury to a third-party or its property (liabilities); and (2) the risk that the policyholder may be sued by a third-party who is seeking to establish that the policyholder is liable for an injury to the third-party or its property (defense costs).

20.     Thus, CGL policies include two fundamental obligations on the part of the insurer.  First, subject to the terms and conditions of the particular CGL policy, the insurer agrees to pay directly, or reimburse the policyholder for, any settlement, judgment or other award of damages for which the policyholder is responsible (sometimes referred to as "paying indemnity").  Second, the insurer agrees to pay directly, or reimburse the policyholder for, the costs incurred in defending the policyholder against a lawsuit or other proceeding seeking to establish the policyholder's liability for injury to a third-party or its property. Such costs (known in the insurance industry as "defense costs" or "costs of defense") typically include, but are not limited to, attorneys' fees (usually the majority of defense costs), court reporters' fees, investigators' fees, experts' fees and the like.

21.     Over the past several decades, the number of lawsuits that are filed each year against religious organizations and American businesses has grown dramatically, if not exponentially.  During the same period, average awards have risen significantly. Many such organizations and American businesses have taken notice of this situation and have responded by purchasing multiple CGL policies that (i) provide coverage during a single coverage period and (ii) cumulatively provide tens, or even hundreds, of millions of dollars in insurance limits to the policyholder.

22.     However, many of the lawsuits filed in recent times involve allegations of wrongdoing that happened many years, if not decades, in the past.  For example, if an individual is diagnosed with a lung disease today that arises from his exposure to a business's asbestos-containing product in the 1960s, even though the individual's lawsuit against the business is filed today, the business's CGL policies that it purchased in the 1960s are the insurance policies that will be called upon to respond to the liability.

## II.    Aggregate Limits

23.     Aggregate limits means that no matter how many claims are brought against a policyholder, the insurer will put all of those claims together as an aggregate and will pay no more than that limit.  This is important to limit the liability of an insurer in products liability where a product with a defect may injure thousands of people.

24.     CGL insurance is a standardized type of coverage in terms of policy forms and rates.   Insurance  industry  groups  called  "rating  bureaus"  have  drafted  the standardized forms for CGL policies and developed rates based on those forms since at least the 1930s. These various rating bureaus merged in 1970 to form the Insurance Services Office ("ISO").   It is a long-standing custom and practice in the liability insurance industry for insurance companies to sell primary CGL insurance using the standardized insurance policy forms and provisions developed by the rating bureaus and later the ISO.

25.     When companies have losses, they report to ISO.  ISO combines the reporting to create rates.  It is important that the reported information be uniform.  For products, all of the information will reflect aggregates.  For non-products, all of the information will reflect no aggregates.

9

26.     Since the 1940s, one of the standard terms for products coverage in CGL policies was an aggregate limit.  The ratings manuals from the rating bureaus and the ISO provided prices for products liability coverage only with an aggregate limit, such that, when using those ratings manuals, a company could not even price a policy without such a limit.  Conversely, for other lines of insurance the absence of an aggregate limit was the standard.  Indeed, the first (1964-1967) of four Agricultural Insurance Company policies at issue in this lawsuit—the only one for which we have a copy of the Limits of Liability provisions—explicitly states that the aggregate limit stated in the declarations page applies solely to "the company's liability for all damages arising out of the products hazard."  (DD_INS_00178)  The original ISO CGL form contains the very language that appears in the 1964 to 1967 Agricultural Insurance Company policy regarding application of aggregate limits and also reflects the understanding of the drafters of the CGL policy, the insurance company underwriters and policyholders.  That understanding is when one bought a CGL policy, one would accept aggregate limits for products and completed operations and no other liabilities.

27.     In 1941, the National Bureau of Casualty Underwriters ("NBCU") and the Mutual Insurance Rating Bureau released the first CGL form, which included an aggregate limit for "products/completed operations bodily injury."  Standard Provisions for General Liability Policies, Comprehensive General Liability Form (1941).  The 1947, 1955, and 1966 form CGL policies similarly contained an aggregate limit for products coverage.  Standard Provisions for General Liability Policies, Comprehensive General Liability Form (1947); Standard Provisions for General Liability Policies,

10

Comprehensive General Liability Form (1955); Standard Provisions for General Liability Policies, Comprehensive General Liability Form (1966).

28.     In 1965, Richard H. Elliott, the Secretary of the NBCU, explained the 1966 revisions to the CGL form, noting that certain changes to the terms of ***products coverage*** were appropriate because "[r]eliance will be placed chiefly upon the aggregate limit to establish the cut-off of coverage in the case of catastrophic happenings." (Richard H. Elliot, *The New Comprehensive General Liability Policy*, Liability Insurance Disputes, 12-7 (S. Schreiber edition 1968).)  Also in 1965, the primary drafter of the 1966 CGL form explained the forthcoming changes in an article, noting that the aggregate limit was included in the form "to establish a cut-off of coverage in the kind of catastrophic incidents" where other provisions previously had limited liability.  (Norman Nachman, *The New Policy Provisions for General Liability Insurance*, 18 The Annals 196, 204 (1965).)

29.     During my time at Liberty Mutual and the Public Service Mutual Insurance Company and then involved with other matters at the American Insurance Association and as a broker, it was the general practice that there would be aggregate limits of products and completed operations but not other exposures.  While at both Liberty Mutual and Public Service, I handled many non-products bodily injury cases because we insured many of the largest retail department stores with bodily injury exposures, and insured other policyholders with massive bodily injury exposures such as the United Parcel Service (UPS).  In none of those matters do I remember an aggregate limit applicable to those kinds of injuries.  These kinds of personal injury violations are similar to the abuse claims against the Diocese.

11

30.     Out of the thousands of primary policies that I have reviewed, from hundreds of different companies, only two policies provided products coverage without aggregate limits.  The inverse is also true.  Out of the thousands of primary CGL policies that I have reviewed, I do not recall having seen a primary CGL policy with an aggregate limit applicable to non-products bodily injury coverage.  As the drafting history and contemporaneous commentary cited above makes clear, aggregate limits apply to products and completed operations coverage.

31.     Liberty Mutual takes the position in its pleadings filed in this case that the 1967 to 1970, 1970 to 1973, and February to April 1973 Agricultural Insurance Company primary CGL policies for which we do not have the policies' "Conditions" section, including the Limits of Liability provisions, provide aggregate limits to non-products bodily injury coverage.  This is inconsistent with the thousands of primary CGL insurance policies that I have reviewed in my experience and with the custom and practice of the insurance industry.

32.     When an insurance company does something unusual, it explicitly notes that it is unusual.  An insurer would note on the policy's declarations page or otherwise to the insured that the policy has an aggregate limit for coverages that normally do not have an aggregate.

33.     The insurance industry operates with standard forms so insurers and policyholders know what they are contracting to do.  In this case, one of the few parts of the insurance policies at issue that have been located are the policies' declarations pages and they are standard form.  This means that almost certainly the rest of the policy would

12

be the standard ISO form and would include language limiting aggregate limits to completed operations and products liability.

34.     Liberty Mutual's position as alleged in its pleadings can be summarized, as follows:

First, the Declarations Page of the policies provides, in relevant part, as follows:

> The insurance afforded is only with respect to such of the following Parts designated by an "X" . . . and Coverages therein as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be stated herein, subject to all the terms of this policy having reference thereto.

Second, the Declarations Page of the policies provides a stated aggregate limit of liability.

Third, the Declarations Page of the policies provides an "X" in the box next to "Comprehensive General Liability Insurance."

Finally, no "X" appears in the box next to "Completed Operations and Products Liability Insurance."

35.     In other words, the lack of products coverage and a stated aggregate limit must—in Liberty Mutual's view—mean that the aggregate limit applies to the CGL policies' non-products coverages including those for bodily injury.  Based on Liberty Mutual's logic, however, one may ask why its Agricultural Insurance Company policy from 1964 to 1967 states that the aggregate limit applies solely to damages arising out of the products hazard when that policy's Declarations Page states that "aggregate products" are "not covered."  (DD_INS_00174).

13

36.     This is because aggregate limits in primary CGL policies sold at that time applied to products coverage.  If we had the benefit of the Limits of Liability provisions in the 1967 to 1970, 1970 to 1973, and February to April 1973 Agricultural Insurance Company primary CGL policies, they would state that the aggregate limit applies only if the policies provide products coverage—which they, like the 1964-1967 policy, do not.  I am able to opine on the terms of 1967 to 1970, 1970 to 1973, and February to April 1973 Agricultural Insurance Company primary CGL policies based on the thousands of primary CGL insurance policies that I have reviewed in my experience and the custom and practice of the insurance industry, which is corroborated by contemporaneous third-party sources.  The language is part of the ISO CGL form.

37.     The custom and practice of the industry is that the CGL policy in use at the time would include completed operations and products liability.  (Richard H. Elliot, *The New Comprehensive General Liability Policy*, Liability Insurance Disputes, 12-16 (S. Schreiber edition 1968) ("The Coverage Parts affording general liability coverage are designed so that only one such Coverage Part need be utilized to afford the scope of non-contractual liability coverage required by any one policyholder. Thus, if a policy is to afford the full scope of general liability coverage, the Comprehensive General Liability Coverage Part would be appropriate.").)

38.     The fact that the 1967 to 1970, 1970 to 1973, and February to April 1973 Agricultural Insurance Company (Liberty Mutual) policies' declarations pages do not mark an "X" next to the completed operations and products liability insurance is because that would have been used for policies that afforded <u>only</u> completed operations and products liability insurance.  (Richard H. Elliot, *The New Comprehensive General*

14

*Liability Policy,* Liability Insurance Disputes, 12-16 (S. Schreiber edition 1968) ("A separate Part for Completed Operations and Products Liability coverage will be included in the group to enable companies to offer insurance for such hazards **only**.  It is strongly recommended that companies not use this Part in conjunction with the OLT and MC Parts to give coverage equivalent to the Comprehensive General Liability Part. The latter is the appropriate form when all hazards are to be insured.") (emphasis added).)  This is why the CGL form that would have been used with the Agricultural Insurance Company (Liberty Mutual) policies at issue in this case would have included the standard language limiting aggregate limits to completed operations and products liability.

39.     Indeed, the existence of an endorsement that excludes bodily injury and property damage included within the Completed Operations Hazard or the Products Hazard from the CGL coverage part in the Agricultural Insurance Company (Liberty Mutual) policies at issue in this case confirms that completed operations and products coverage was included in the CGL form.  Otherwise, an endorsement would not have been necessary.  (*See, e.g.* DD_INS_00194)  Again, this confirms that the CGL form used in these policies would have included the standard language limiting aggregate limits to completed operations and products liability.

40.     One of the things that I have relied on and insurers have relied on in similar cases are "bookends."  It does not make sense to think that a policyholder would have no aggregate for non-product bodily injury coverage from 1964 to 1967, then have aggregate limits for non-product bodily injury coverage for the next six plus years, and then have no aggregate for non-product bodily injury coverage again in 1973—the very next year for which we have a full and complete copy of the Diocese's primary CGL

15

coverage, including the Limits of Liability provisions.  (CNA 1973 to 1976 CGL policy DD_INS_00238)  These bookends reflect the custom and practice in the industry of how the aggregate limits would work in the industry.

## Conclusions

41.     Based on my knowledge gained from many years of experience in the insurance industry and the industry's custom and practice, it is my opinion with a reasonable degree of professional certainty that the general liability policies from 1967 to 1970, 1970 to 1973, and February to April 1973, sold to the Diocese by Agricultural Insurance Company for which Liberty Mutual is now responsible do not include aggregate limits of liability applicable to non-products bodily injury claims such as the sexual abuse claims at issue in this case.

## References

[1]     Norman Nachman, *The New Policy Provisions for General Liability Insurance*, 18 The Annals 196, 204 (1965).

[2]     Richard H. Elliot, *The New Comprehensive General Liability Policy*, Liability Insurance Disputes (S. Schreiber edition 1968).

[3]     Standard Provisions for General Liability Policies, Comprehensive General Liability Form (1941).

[4]     Standard Provisions for General Liability Policies, Comprehensive General Liability Form (1947).

[5]   Standard Provisions for General Liability Policies, Comprehensive General Liability Form (1955).

[6]   Standard Provisions for General Liability Policies, Comprehensive General Liability Form (1966).

**Exhibits**

I may use as exhibits at trial any documents that the parties produced or any testimony given in this case that refers to or relates to matters set forth in my report. In addition, I may create and use diagrams, pictures, charts, models, animations or other exhibits to aid the Court and the jury in understanding my opinions.

**Documents Considered**

I considered documents produced by the parties in this litigation. Specifically, I considered the Diocese's Second Amended Complaint dated September 29, 2017, the Answer and Counterclaim of Liberty Mutual Insurance Company To The Second Amended Complaint dated October 13, 2017 and the insurance policy documents annexed thereto as exhibits, and certain other insurance policy information regarding CNA.

**Deposition and Trial Testimony**

I have testified as an expert at trial and by deposition in other cases during the previous 4 years, as detailed on my *Curriculum Vitae*.

17

**Statement of Compensation**

My hourly rate for time expended is $700 per hour plus all expenses. My compensation is not dependent on my opinions or the result of this proceeding.

**Exhibit A**

# **Dennis R. Connolly**

17 Philip Drive
Princeton, NJ  08540
609 497 7352
dconnolly@sprynet.com

Dennis R. Connolly was a Managing Director of Marsh USA Inc., the world's largest international insurance brokerage, human resource, and employee benefits consulting firm.  He retired from Marsh on May 28, 2004.  He was in the Professional Resources Group, and was previously the manager of the New York branch Casualty Department and Claims Division at Johnson & Higgins.  Also at Johnson & Higgins prior to its merger with Marsh in 1997, he headed the Law Advisory Division which handled all errors and omissions claims and directors and officers litigation against the firm.  This division also set standards for Johnson & Higgins' brokerage practices.  He also served on the broker's Market Security Committee which set financial resource standards for determining which insurers could be used by Johnson & Higgins.  While at Johnson & Higgins he was Chair of the National Association of Insurance Brokers Claims Committee.  He has negotiated settlements of over $1,000,000,000.00 with insurers and with claimants.

Mr. Connolly came to Johnson & Higgins from the American Insurance Association, where he was responsible for developing and implementing insurance industry policy positions and for supervising liability issues. These included all major liability issues including products liability, environmental liability, medical and professional malpractice, directors and officers' liability and nuclear liability.

As a spokesperson for the insurance industry, Mr. Connolly has testified frequently before state and federal legislatures on product liability, toxic torts, nuclear liability, taxes, medical malpractice, governmental liability, self-insurance, and issues concerning the availability of insurance.  In 1979 he prepared a report," Product Liability Insurance, Underwriting, Rates, Reserves, Business Cycles" for Congress and a federal interagency investigation. This report has been used by several insurers as a training manual. Mr. Connolly has testified on many occasions about insurance underwriting and how it is accomplished for example on September 27, 1979 in the United States House of Representatives he was authorized by the leading liability insurers and their trade associations to explain liability insurance underwriting. He has authored numerous articles and has appeared on many television and radio programs to discuss insurance and liability issues.  Mr. Connolly has debated Ralph Nader, Bob Hunter and Joan Claybrook. His TV appearances include ABC Nightline, ABC Good Morning America, NBC Today Show, WNET MacNeil/Lehrer News Hour, Merv Griffin Show and CNN Crossfire.  He has also been interviewed on CBS, NBC, CNN and INN daily news programs.

During his career, Mr. Connolly has served on the Board of Directors of the Love Canal Medical Trust Fund, as the chairperson of two National Association of Insurance Commissioner Task Forces on Major Exposures, as an advisor to the League of Women Voters Hazardous Substance Study Group, and as a member of the National Association

of Manufacturers Product Liability Task Force, the Keystone Center's Programs on Compensation for Environmental Injuries and its program on Products Liability, as well as numerous state, federal and National Association of Insurance Commissioner study groups. He serves on the advisory Boards of the BNA Toxic Law Reporter, the Executive Enterprise Environmental Quarterly, and the Wharton School Risk Management and Decision Process Center. From 1992 to 1994 he was Chair of the Wharton Center's Advisor Committee. In 1994 he was appointed by the court as Technical Advisor to and Co-Chair of the Foreign Fracture Panel Bowling Pfizer Heart Valve Class Settlement.

Mr. Connolly has been involved in claims arising from Love Canal, L-Tryptophan, steel frame buildings, soil expansion, heart values, breast implants, Phen-Fen, environmental toxic torts and clean-ups, diabetes and antacid medicines, and asbestos among others. He has been involved in insurance claims relating to exposures involving benzene, food and drink recalls, defective packaging, breast implants, asbestos, environmental claims, automotive products and vehicles, tires, soil expansion and others.

Mr. Connolly is a graduate of Colby College in Waterville, Maine and has a J.D. from Brooklyn Law School. Mr. Connolly has participated in special liability programs at the University of Houston Law School, the Wharton School of Business, and Yale Law School. His papers on Mass Tort Liability have been used at Columbia and Harvard Law Schools. He was elected to the American Law Institute in 1992, has become a life member and was an advisor to the Institute's Compensation and Liability for Product and Process Injuries Project and the Restatement of Law – Torts: Apportionment of Liability. He was on the Consultative Committees for the Restatement of Torts sections on Basic Principles of Torts and on Aggregate Liability. He was Vice Chairman of the American Bar Association's committee on Energy Resources Law. He served on the Business Section's Special Committee on Tort Reform and the TIPS Special Committee to Draft Environmental Insurance Policy Language, a committee appointed by the American Bar Association and the National Association of Insurance Commissioners. In December 2004-5 he was selected to serve as chairperson of the Corporate Insurance Committee at the International Institute for Conflict Resolution and Prevention (CPR) which produced a protocol for insurance coverage dispute mediation.

In 1999 he taught a seminar for the PLI on Insurance Issues in the New Millennium. In 2000 he taught a seminar for ALI-ABA on insurance coverage issues. In 2001 he taught at a Risk and Insurance Management annual meeting session on Mass Torts. In January 2002 he taught a seminar as visiting lecturer with Professor David Rosenberg on mass torts and insurance at Harvard Law School and in April of 2002 he was a speaker at the ALI-ABA London, England program on United States Litigation (other speakers included Justice Sandra Day O'Connor, Judge Jack B. Weinstein, Professor Arthur Miller, and Professor Geoffrey Hazard). In 2002, 2003 and 2004 he lectured in a class on mass torts taught by Professor Geoffrey Hazard and Judge Anthony Scirica (U.S. Circuit Court of Appeals, 3rd Circuit) at the University of Pennsylvania Law School.

From 1965 to 1973 Mr. Connolly was employed by Liberty Mutual Insurance Company in its captive law firm Fogarty & Nielsen. He litigated and settled cases on behalf of

Liberty Mutual and its insureds.  He also defended cases against Liberty in matters involving coverage disputes.  From 1973 to 1976 he held a similar position with Public Service Mutual Insurance Company's captive law firm Katz & Gantman.  In both companies he worked with senior officials, including the general counsels of the companies, and was involved in issues relating to the regulation of insurance.

Records of his publications and speeches between 1995 and 2002 were lost in the World Trade Center on September 11, 2001.

Miscellaneous employment before 1965: Law firm clerk 3 years during school year, janitor World Fair, department store salesman and inventory clerk, merchant marine 3 summers.

Dated: February 1, 2018

## **Testimony and Expert Reports**

Product Liability Insurance: Underwriting, Rates, Reserves, Business Cycles - A report to Congress and the Federal Interagency Task Force on product liability. October 1979.

Owens-Illinois: consulting expert and expert report on availability of insurance for asbestos from 1943 to 1995.  McCarter & English, LLP (New Jersey).

NSI: expert report on availability of asbestos insurance 1985 to present, May 31, 2007; deposition July 7, 2007.  Gilbert Heinz & Randolph.

Asarco: expert report and deposition on availability of asbestos insurance 1984 to present.  Porzio Bromberg & Newman P.C.

Brinco/Keene/Genlite: expert report and deposition on insurance industry's view of asbestos liability.  McCarter & English, LLP.

Ticona (Hoechst Celanese) (Bermuda arbitration): expert report on product liability development of the law, underwriting practices and responsive insurance products. Jenner & Block LLP.

Conoco (Bermuda arbitration): expert report regarding meaning of XL policy.  Anderson Kill & Olick, P.C.

Uniroyal: expert report, deposition and trial on availability of asbestos insurance, underwriting practices, and reasonable availability test.  Qualified by court. McCarter & English, LLP (New Jersey).

Warner-Lambert: expert report and deposition on availability of environmental insurance. Dughi & Hewit (New Jersey); Covington & Burling LLP.

Supplied declarations on the cost of medical monitoring programs in class action removal cases involving Paxil, Baycol, Rezulin, Prepulsid, Bextra, Celebrex, Neurontin and an

22

Olin environmental claim; law firms include Kaye Scholer LLP, Drinker Biddle, Reed Smith LLP, Shook, Hardy & Bacon LLP, Sidley Austin LLP, and Davis Polk & Wardell LLP. All declarations found qualified.

GE:  insurance operations, underwriting and asbestos allocation; no expert report, no deposition. McCarter & English, LLP.

Eljer: expert report on meaning of "known loss."  McCarter & English, LLP (Pennsylvania).

Viacom:  expert report and arbitration on meaning of policy language, operations of insurers, meanings of binders, before Hon. Richard Cohen. Found qualified by arbitrator. April 27 - 28, 2004.  Paul, Weiss, Rifkind, Wharton & Garrison LLP and Robertson, Freilich, Bruno & Cohen LLC.

GlobalNet v. Frank B. Crystal & Co.:  expert report on broker malpractice January 2004. Lowenstein Sandler PC (New Jersey).

CSR v. Century et. al.:  expert report and deposition on availability of asbestos insurance, underwriting, and the international insurance market August 2004.  McCarter & English, LLP (New Jersey).

Congoleum Corp. v. ACE Insurance Co. et al.:  expert report on asbestos insurance issues July 22, 2004.  Dughi, Hewit & Palatucci (New Jersey).

Spaulding Composites Company Inc. v. Aetna Casualty & Surety Company et al.:  expert report on the availability and amounts of insurance for environmental exposures September 7, 2004.  Pitney Hardin (New Jersey).

Roman Catholic Archbishop of Boston v. Lumberman's Mutual Casualty Insurance: affidavit and deposition on insurance practices, missing policies, unfair claims practices, underwriting and reasonableness of tort settlements November 9, 2004; expert opinion and report February 1, 2005.  Qualified in court opinion.  Ropes & Gray LLP (Massachusetts).

Roman Catholic Bishop of Manchester v. Centennial Insurance Company and The New Hampshire Insurance Guaranty Association:  preliminary report on insurance policy meanings, claims settlement practices internationally, reasonableness of tort settlements November 2004.  Devine, Millimet & Branch.

Coca Cola and Aqua-Chem v. Insurers (Wisconsin):  expert report and deposition on availability of asbestos coverage, affidavit December 22, 2004.  King & Spalding.

WEPCO v. Insurers (Wisconsin):  expert report on insurer claim practices, late notice, affidavit on policy language meaning and underwriting practices 2004; rebuttal report June 2005; deposition July 28, 2005.  Swidler Berlin.

Union Carbide v. Certain Underwriters at Lloyd's:  validity of Equitas certification requirements in Wellington Agreement Arbitration, 2005; no expert report or deposition. Mayer, Brown, Rowe & Maw.

United Nuclear v. Insurers (New Mexico):  Expert report regarding availability of insurance for environmental exposures May 5, 2005; deposition August 5, 2005; affidavit on EIL insurance January 23, 2014.  McCarter & English, LLP.

GAF v. Hartford Ins.:  expert report and depositions regarding bad faith and policy availability in environmental claim September 30, October 14, 2005, November 29, 2005 and December 16, 2005.  McCarter & English, LLP (New Jersey).

G. I. Holdings v. Reliance Insurance (United States District Court):  expert report regarding bad faith in a D&O insurance context April 29, 2005, deposition December 2, 2005.  McCarter & English, LLP (New Jersey).

AstenJohnson, Inc. v. Columbia Casualty (United States District Court for the Eastern District of Pennsylvania):  meaning of "ASBESTOSIS" exclusion May 11, 2005; rebuttal June 2005; depositions July 7 and 13, 2005; trial testimony found qualified by court. September 22 - 23, 2006.  Anderson, Kill & Olick, P.C.

Gauches v. Chubb:  expert on underwriting and insurance business practices; deposition June 23, 2006.  Day Berry & Howard.

AmQuip v. Admiral:  expert report on bad faith claims practices, disparagement matter, August 26, 2005; rebuttal report September 9, 2005; deposition September 13, 2005.  McCarter & English, LLP (Philadelphia).

John Crane v. Admiral (Illinois):  deposition regarding asbestos insurance coverage November 11, 2005.  Covington & Burling LLP.

Wyeth v. Lexington Insurance Company (Superior Court of New Jersey, Essex County): designated expert on the Bermuda Form Jan. 17, 2006; deposition February 22 - 24, 2006; certifications April 28, 2006.  Orrick, Herrington & Sutcliffe.

West American Insurance Co. v. Quagmire Two, L&H Plumbing and Heating Supplies, Inc. availability of coverage for asbestos, drafted report. (Superior Court of New Jersey, Ocean County):  Starkey, Kelly, Bauer & Kenneally.

Vaicom International v. Admiral Insurance (Superior Court, New Jersey): expert report issues relating to environmental insurance May 30, 2006; deposition October 10 - 11 and November 17, 2006.  Paul, Weiss, Rifkind, Wharton & Garrison LLP and Robertson, Freilich, Bruno and Cohen, LLC.

Rhone-Poulenc AG Co., Inc., v. Royal Insurance (Superior Court, New Jersey, Middlesex County): expert report on underwriting environmental insurance August 18, 2006; deposition October 13, 2006.  Porzio, Bromberg & Newman.

National Union Fire Insurance Co. v. EPT Management Co. and Mary Hardnet (United States District Court for the Northern District of Georgia):  expert report on insurance claims handling and settlement techniques; coverage in premises rape case, appeared for rape victim, deposition January 10, 2007.  Reed Smith LLP and Jett & Liss.

Thomas & Betts Corp. v. Travelers Insurance Company (Superior Court, New Jersey, Middlesex County): bad faith and availability of environmental insurance, report January 5, 2007, deposition March 20 - 21, 2007.  Robertson, Freilich, Bruno & Cohen, LLC.

Columbia Energy Group v. Fisher et al. (Supreme Court of New York, New York County): consulting and testifying expert on broker and insurance service provider liability; declaration January 2007.  Robertson, Freilich, Bruno & Cohen, LLC.

Brown Group Retail, Inc. v. Allstate Insurance Group (District Court, City and County of Denver, Colorado):  expert report regarding the availability of environmental insurance after 1985 January 9, 2007; deposition February 9, 2007.  Covington & Burling LLP.

Degussa Corp v. Century Indemnity, et al. (Superior Court, New Jersey, Union County): expert report on allocation and availability of environmental insurance April 2007; deposition June 5, 2007; certification on insurer coverage positions June 26, 2007. Lowenstein Sandler PC.

Bank of America v. SR International (General Court of Justice, State of North Carolina, Superior Court Division, Mecklenburg County): report and deposition regarding bank investment risk policy, underwriting of policy and bad faith claims July 20, 2007.  King & Spalding.

Continental Insurance Co, et al., v. Honeywell International (Superior Court, New Jersey Law Division, Morris County):  expert report on asbestos insurance availability and meaning of asbestosis exclusion July 27, 2007; rebuttal report November 13, 2007; deposition December 15, 2010,  Kirkpatrick & Lockhart.

WEPCO v. Northern Assurance Company of America (United States District Court for the Western District of Wisconsin):  expert report on environmental liability and late notice January 7, 2008; deposition February 25, 2008.  Heller Ehrman LLP.

State Auto Property & Casualty Company v. ADEQ et al. (Pulaski County Circuit Court, Arkansas):  interpretation and meaning of "absolute pollution insurance exclusion," waste, products, deposition January 14, 2008; jury trial verdict for policyholder, a gas station owner. Found qualified by court. January 22 - 23, 2008.  Chisenhall, Nestrud & Julian.

SPX v. ACE Property & Casualty Co., et al. (Superior Court, State of North Carolina, Mecklenburg County):  expert report and deposition regarding availability of asbestos insurance after 1986 February 12, 2008.  Covington & Burling LLP.

Freeport LNG v. SRI et al. (arbitration):  expert report on the meaning of policy language and claims practices March 28, 2008; testimony in arbitration hearing, found qualified by panel. April 24, 2008.  King & Spalding (London, England).

Quick Service Management Inc. (Taco Bell) v. Insurers (Superior Court, New Jersey, Middlesex County):  affidavit regarding meaning of insurance policy and underwriting practices, business interruption, May 20, 2008.  Anderson, Kill & Olick, P.C.

Blue Capital v. Palmer & Cay (United States District Court for the Northern District of Texas):  consultant on broker malpractice 2008.  Hobgood and Rutherford LLC (Atlanta, Georgia).

National Union Fire Ins. Co. of Pittsburgh and Titeflex Corp. (American Arbitration Association):  meaning of Named Peril Time Element Pollution Endorsement; pollution-products liability, deposition January 9, 2009, testified at hearing February. Found qualified by panel. 19 - 20, 2009.  Covington & Burling LLP.

NCR Corp. v. AIG Centennial Ins. Co., et al.: (Circuit Court, Brown County, Wisconsin): expert report on late notice, known loss, claims and underwriting practices of insurers October 22, 2008; deposition January 15, 2009 and February 16, 2009; deposition on defense coverage issues February 18, 2010; Qualified and testified at special master hearing on defense cost issue May 6, 2010.  Covington & Burling LLP.

James River Insurance Co. v. Quanta Reinsurance Co.:  arbitration, insurer's party arbitrator, proper value of letter of credit October 30, 2009.  ARBITRATED TO AWARD

Moon Mountain Farms, LLC v. Rural Community Insurance Company (American Arbitration Association):  expert report, "Right to Coverage, Underwriting and Claims Practices" farm insurance, May 28, 2009; deposition November 12, 2009.  Attorney Larry DeRaspino, Arizona.

Intalco v. Century and Central National: (Superior Court, Washington, Whatcom County):  rebuttal expert report on bad faith July 9, 2009; deposition October 1, 2009. Robertson, Freilich, Bruno & Cohen, LLC.

General Electric Company v. Lines et al., and One Beacon Intervenor - Defendant (Superior Court, Suffolk County, Massachusetts):  affidavit on availability of environmental insurance October 5, 2009; witness on intent, policy interpretation, known loss, misrepresentation, deposition March 25, 2010.  McCarter & English, LLP.

Rockwood Holdings, Inc., v. Lexington Insurance Company:  named as party arbitrator JAMS Rules, appointed December 11, 2009, D&O policy dispute.   AWARD December 23, 2010.  Lowenstein Sandler PC.

Highlands Fuel Delivery, LLC et al. v. ACE INA Insurance Co. (Maine Superior Court): affidavit on meaning of pollution exclusion April 27, 2010. Report umbrella polices operations, October 2, 2015, deposition January 13, 2016, Covington & Burling LLP.

Lexington Ins. Co. v. UnitedHealth Group (United States District Court for the District of Massachusetts):  expert report on insurance policy drafting June 21, 2010; deposition July 13, 2010.  Covington & Burling LLP.

American Safety Ins. Co. v. ALEA London: insurer party arbitrator, reserving, appointed June 21, 2010.  Morris, Manning & Martin.

Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (United States District Court for the Eastern District of Washington):  expert report on timeliness of notice and prejudice, environmental liability deposition January 7, 2011.  Orrick Herrington & Sutcliffe LLP.

Lloyd's Underwriters v. Teck Metals Ltd. (Vancouver Registry, Action No. S056205, Canada):  expert report on timeliness of notice and prejudice, environmental, January 20, 2011.  Lawson Lundell.

General Refractories Co., v. First State Insurance Co., et al. (United States District Court for the Eastern District of Pennsylvania):  expert report on insurance policy drafting in case involving asbestos, January 20, 2011; deposition March 25, 2011.

Babcock & Wilcox v. American Nuclear Insurers (Court of Common Pleas of Allegheny County, Pennsylvania):  affidavit for interested party Atlantic Richfield Company on claims handling and bad faith, nuclear insurance, February 5, 2011, Report July 15, 2011, James Dattilo & Associates.

Tyson Foods Inc. v. Allstate Insurance, et al. (Superior Court of the State of Delaware in and for New Castle County):  affidavit on missing policies, policy forms and drafting, insurance regulation, pollution exclusion, application of "absolute pollution exclusion" products liability, March 4, 2011.  Jenner & Block LLP.

T H Agriculture & Nutrition v. ACE P&C Casualty Co. (Circuit Court, Cook County, Illinois, Chancery Division):  expert report on lost policies, availability of asbestos insurance, annual and stub period limits, follow form practices, March 22, 2011. Deposition June 2 &3, 2011, March 21, 2012, Rebuttal Report March 6, 2012, Qualified, Kasowitz, Benson, Torres & Friedman LLP.

UnitedHealth Group v. Columbia Casualty Co., United States District Court for the District of Minnesota, Underwriting practices, policy drafting, consent to settlement, notice provisions, insurance basics, defense cost issues, April 15, 2011, Rebuttal Report June 13, 2011, Deposition June 28, 2011, Trial testimony may 24, 2012, Trial testimony June 26, 2013, found qualified, Oppenheimer, Wolff & Donnelly LLP and Covington & Burling LLP.

Triumph Foods v. RLI and brokers, Missouri District Court, Builder's Risk Policy, Claims handling, underwriting, no report, deposition April 14, 2011, Anderson Kill & Olick LLP.

INA  V. Syngenta Crop protection Inc. American Arbitration Association #13 195 00880 09, Environmental Liability, product liability, personal injury, release of environmental liabilities, expert witness, no report, deposed June 7, 2011, qualified at hearing Ken Feinberg arbitrator June 15, 2011, Hoguet Newman Regal & Kenny and  McCarter & English.

Travelers Insurance v. Honeywell International, New York Supreme Court, County of New York, #102138/06, asbestos settlement practices of insurers meaning of policy provisions, affidavit June 10, 2011, affidavit September, 27, 2011, K&L Gates.

In Re Arbitration between Soo Line Railroad Company (Doing Business as Canadian Pacific) and London Market Insurers, availability of insurance without pollution exclusions between 1944 and 1986, Report June 17, 2011, Trial hearing July 13, 2011 qualified at hearing, Orrick, Herrington & Sutcliffe.

AT&T Wireless Services, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA, et al. Case No. 03C-12-232-WCC, Superior Court of the State of Delaware, insurer bad faith, London custom and practices, report July 14, 2011, Corr, Cronin, Michelson, Baumgardner & Preece, Seattle Washington.

Newport Associates Phase I v. Travelers, Superior Court of New Jersey, Law Division, Hudson County, Certification on insurer claims practice in environmental claims, September 15, 2011, Riker, Danzig, Scherer, Hyland and Perretti.

Generali US Branch v. DeLonghi America Inc., Superior Court of New Jersey, law Division, Bergen County, Products Liability, Bad Faith, Report October 31, 2011, deposition February 1, 2012, McElroy, Deutsch, Mulvaney & Carpenter.

F. C. Bloxom Company v. Fireman's Fund, United States District Court, Western District of Washington, Insurer bad faith, report, property loss claim,  November 16, 2011, Declaration February 13, 2012, Corr Cronin Michelson Baumgardner & Preece.

Viking Pump and Warren Pumps v. Century Indemnity, Superior Court of the State of Delaware, New Castle County, Asbestos, Custom and practice and policy provisions concerning follow form, exhaustion, defense coverage issues, non-cumulation clause, Report December 23, 2011, Rebuttal Report March 9, 2012, Deposition, April 16, 17, 2012, Trial Testimony November 1, 2012 Kasowitz, Benson Torres & Friedman.

The Wornick Company v. Houston Casualty Company, USDC for the Southern District of Ohio Western Division, Civil Action 11-391, Report April 5,2012, Insurance industry policy interpretation custom and practice and insurer bad faith, Anderson, Kill & Olick

U-Haul Co. of PA v. Utica Mutual, USDC, for the District of Delaware, (1:11-cv-00510-JCJ) insurer custom and practice, bad faith, Report May 28, 2012, Polsinelli Shugart

Mine Safety Appliances v. North River, U.S. D.C. Western  District PA No 2:09-cv-00348, North River v. Mine Safety Appliances, Court of Common Pleas, Allegheny County Pa, No. G.D. 10-007432, Report on insurance basics, defense costs, effect of

pollution exclusion, products liability July 27, 2012, rebuttal report August 30, 2012, deposition Sept 14, 2012, Addition to Report April 23, 2013, second deposition September 12, 2013, trial September 19, 2016, Reed Smith.

U. S. Silica v. ACE et al, Circuit Court of Morgan County, West Virginia, Affidavit pollution exclusion and product liability, August 13, 2012, availability of product liability insurance for silica liability, deposition June 20, 2013, Trial September 25, 2013.  K&L Gates.

Cannon Electric Inc. (Goulds Pumps) v Affiliated et al., Superior Court of California, County of Los Angeles, availability and sufficiency of asbestos coverage 1930's to 1980's, use of aggregates in products liability insurance, deposition August 21, 2012, September 18, 2012, trial testimony January 7 and 8, 2013.  Morgan Lewis.

Atlantic Research Corp v. Admiral Ins. Co. et al., Superior Court of New Jersey, Law Division, Bergen County, Environmental insurance availability, report  October 16, 2012, Deposition February 18, 2013, Saretsky Katz Drandoff & Glass.

Danaher Corp. v. Travelers et al., USDC, Southern District of New York Civil Action No. 10 CIV 0121 (BSJ), Availability of asbestos insurance, report October 22, 2012, further report September 28, 2015, deposition January 20, 2016, Reed Smith and McCarter & English.

Long Island Lighting and Keyspan Corp v. American Re-Insurance and Century Indemnity, Supreme Court of New York, County of New York, Index No. 97-604715, Environmental loss, late notice, waiver of defense, availability of insurance, report, April 15,  2013, Deposition September 20, 2013, Deposition November 14, 2013, Covington & Burling.

Travelers Casualty and Surety Company v. Quigley Company Inc., Arbitration, Honorable John S. Martin, Jr. CPR File No. w-09-01TJ, insurance policy writing, custom and practice, asbestos and similar diseases exclusion, report April 15, 2013, Deposition August 8, 2013, hearing testimony  January 30, 31, 2014, Wilk Auslander.

Lincoln Electric Co., V. Travelers and St. Paul Insurance Companies, USDC,  Northern District of Ohio, Eastern District, #1:11-CV-2253, Access to umbrella policies after settlement of primary polices, insurers defense obligations, report May 10, 2013, Covington & Burling.

Todd Gelfand, Trustee of the REATA Trust v. North American Capacity Insurance, USDC, Northern District of California, San Francisco Division, #C12-04819 EMC, Bad faith, insurance practice, your work product clause, Report September 18, 2013, rebuttal report October 6, 2013, deposition November 1, 2013, Manatt, Phelps & Phillips.

Northwest Pipe v. RLI and Employers of Wausau, USDC, District of Oregon, Case No. 3:09-cv-1126-BR, Availability of environmental insurance after February 19, 1986, report September 25, 2013, rebuttal October 9, 2013, Black Helterline.

Travelers Indemnity et al. v. Northrup Grumman Corp. USDC, Southern District of New York, 12 Civ. 3040 (KBF) Availability of environmental insurance, the basics of insurance, notice and claims handling, report October 7, 2013, deposition January 10, 2014, Covington & Burling.

The Humane Society of the United States v. National Union, USDC, District of Maryland (Southern Division) #8:13-cv-01822-DKC, D&O, insurance basics, notice, application, report October 9, 2013, Motion to strike denied but additional report required July 3, 2014, Supplemental report August 8, 2014, deposition September 30, 2014, Declaration on D&O experience February 2, 2015, Perkins Coie, Howard Weir Esq., Miller & Miller.

Goodyear Tire & Rubber Co. v. Travelers Casualty and Surety Co., United States District Court for the Western District of Pennsylvania, Civil Action No. 13-00256, Report custom and practice in umbrella polices, January 28 ,2014, rebuttal report February 19, 2014, deposition February 26, 2014, Covington & Burling.

Allianz Global Risks US Insurance Company v. ACE et al., Circuit Court of the State of Oregon, For the County of Multnomah, No. 1204-04552, Missing policies and custom and practice in providing coverage where policies are lost, January 31, 2014, rebuttal report February 14, 2014, trial March 3, 2014. Fronting policies, reasonableness of asbestos and environmental settlement, reserving practices, underwriting practices, trial testimony October 14, 15, 2014, McDermott Will & Emery.

CITGO Petroleum Corp. v. Century Indemnity, et al. 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana, Division E – Case No. 2005-1523, Report on notice issues,  March 7, 2014, Deposition June 27, 2014, found qualified by court, October, 2104, Orrick.

Turkey Run Properties v. Seneca Ins and Gleason Agency, Lycoming County, Court of Common Pleas No. 11-02404, Pennsylvania,  Insurance application and broker practices, report May 31, 2013, qualification hearing March 28, 2014, Anderson Kill.

Apogent Transition v. Hartford Accident & Indemnity, Superior Court of New Jersey, Law Division Hudson County, #HUD-L-3983-13, Report pollution exclusions and availability of insurance after the 1985 policy, April 15, 2014, Covington & Burling.

Utica Mutual Insurance v. Fireman's Fund Insurance Co., United States District Court for the Northern District of New York, Civil Action 6:09-cv-0853 (DNH/TWD), Product liability aggregate limits 1960's and 1970's, umbrella and excess insurance, 30(b)6 witness for Utica, May 13, 2014, expert report June 23, 2014, response report July 8, 2014, expert deposition September 18, 2014, Trial November 30, 2017  Hunton & Williams and Sidley Austin.

Mine Safety Appliances Co., v. AIU Insurance Company et al., Superior Court of the State of Delaware in and for New castle County C. A. No. N10C-07-241 (MMJ), Report general insurance custom and practice, defense cost coverage, claims made coverage, follow form, multi-year policies, consent to settlement, Non-Cumulation Clauses, June

30

25, 2014,  Rebuttal report October 6, 2014, deposition December 11, 12, 2014, January 29, 2015, Gilbert LLP.

Passaic Valley Sewerage Commission v. Continental Casualty et al., Docket No. ESX-L-820-11, New Jersey, report on missing policies, limits, provisions on primary layer, October 2, 2014, Piro, Zinna, Cifelli, Paris & Genitempo.

ExxonMobil Corporation v. Certain Underwriters at Lloyd's, et al.,  Supreme Court of the State of New York, County of New York, #650503/2012, report on notice issues asbestos, December 17, 2014,  rebuttal report February 13, 2015, deposition March 11, 2015, Covington & Burling.

United Healthcare Corporation n/k/a UnitedHealth Group Incorporated v. Reliance Insurance Company, Proof Claim No. 2134100, No. 8 REL 2013, Use of claims-made and occurrence insurance policies in managed care insurance, report December 22, 2014, rebuttal report February 12, 2015, Trial testimony March 3,2015, Oppenheimer, Wolff & Donnelly .

Cooper Industries, LLC v. Employers Insurance of Wausau, et al., Docket No. ESX-9284 (N. J. Super. Law Div. - Essex County), report on insurance availability for environmental liability pre-1957 and post 1986, February 12, 2015, Deposition for both Hudson and Essex County cases May 12, 2015, Jones Day and Lowenstein Sandler.

Cooper Industries, LLC v. Employers Insurance of Wausau, et al., Docket No. Hud-2471-13 (N.J. Super. Law Div. – Hudson County) report on insurance availability for environmental liability pre-1957 and post 1986, February 12, 2015 Lowenstein Sandler and Jones Day.

Century Indemnity Company v. The Marine Group, et al., United States District Court, District of Oregon, Portland Division, Case No. 08-cv-01375-AC, report missing policies,  March 10, 2015, deposition April 8, 2015, trial November 4, 5, 2015. Shipman & Goodwin.

Syngenta Crop Protection, Inc. v INA et al., Superior Court of New Jersey law Division: Union County, Docket No. UNN-L-3230-08, Report on defense cost policy provisions, availability of environmental insurance after 1985 and annual limits in multiyear policies, May 29, 2015, Reply report October 26, 2015 , depositions December 2 and 9, 2015, Certification on annual periods, July 22, 2016, Hoguet Newman Regal & Kenney  and McCarter & English.

Somerset Tire Service, Inc. v. New Jersey Mfg., N.J. Super. Law Div. Somerset County, Docket number SOM-L-1334-13, Report application of garage liability insurance, May 29, 2015, Deposition July 31, 2015, Lowenstein Sandler.

Goodrich Corp. v. A. G. Securitas, et al., The Court of Common Pleas, Summit County, Case No. CV 2008 08 5847, Rebuttal report defense coverage, access to excess insurers, July 13, deposition September 15, 2015, Brouse McDowell.

Hartford Accident & Indemnity (IDI) v. North River Insurance Co. et al., Supreme Court of New York, County of New York, No. 651296/2011, Missing policies, Report July 28, 2015, Rebuttal November 20, 2015, Deposition April 29, 2016, Shipman & Goodwin.

April D. Douthitt-Dugger, et al. v. Quorum Health Services, State of New Mexico, County of Bernallillo, Second Judicial District Court, No. D-202-CV-2012-01798, Operation of Claims Made Polices "Batching", Affidavit August 20, 2015, Anderson Kill (Ventura, CA).

American Home Assurance v. Port Authority of New York and New Jersey, et al. Supreme Court of new York, Index No. 651096/2012, Underwriting, Premises insurance, Wrap ups, Limits, Injury during policy period, Claims handling, Report October 16, 2015, Rebuttal report November 11, 2015, deposition December 14. 2015, Anderson Kill. K&L Gates.

City of Phoenix v. First State et al., United States District Court, District of Arizona, Case No. CV-15-00511-PHX-NVW, Report defense obligations, attachment point and bad faith, October 29, 2015, deposition January 6, 2016, Shipman and Goodwin.

New England Reinsurance v. Ferguson Enterprises, Northbrook Insurance, United States District Court, District of Connecticut, Civil Action No. 3:12-cv-00948-WWE, issue of claimed mistake in asbestos exclusion issued in endorsement, report March 11, 2016, Deposition May 3, 2016, Shipman & Goodwin.

Ingersoll Rand Co. v. Affiliated FM Insurance Company, et al. Superior Court of New Jersey Law Division, Docket No. Mid-L-252-12, missing policies, availability of asbestos coverage to Ingersoll Rand after January 1, 1985, timely notice, April 22, 2016, Deposition July 28, 2016, K&L Gates.

Yarway Corp (Ginnell) v. Admiral Insurance et al., Superior Court of the State of California, for the City and County of San Francisco, Case No. CGC-04-435399, Report Custom and practice regarding exhaustion of under lying insurance and insolvency, June 30, 2016. Deposition August 29, 2016, Morgan Lewis.

National Union v. Advanced Micro Devices, Party Arbitrator 2016, first hearing June 15, 2017, Retrospective rating, arbitration, equity and other issues, Shartsis Friese and Anderson Kill.

General Mills v. National Union, United States District Court, District of Minnesota, Case No. 15-cv-02046 (WHW/HB) custom and practice in insurance policy presentation and placing of crime policies, report November 1, 2016, Faegre Baker Daniels.

American Precision Industries v. Federal Insurance et al., United States District Court, Western District of New York, No. 14-CV-01050 (RJK) (HKS), Missing policies, Report November 10, 2016, McCarter & English.

MacDermid Inc. v. Travelers Indemnity, Superior Court J.D of Hartford at Hartford, Docket No. XO4-HHD-CV12-6067744-8, Bad faith, Deposition January 4, 2017 and January 25, 2017, Carmody Torrence Sandak Hennessey.

Hexcel Corp. v. Allianz et.al., New Jersey Superior Court, Essex County Docket No. ESX-L-7918-12, availability of environmental insurance including claims-made coverage Report January 13, Rebuttal report April 3, 2017, Deposition June 2, K&L Gates.

Illinois Union Insurance v. Intuitive Surgical, USDC, Northern District of California, San Francisco Division, Case No. 3:13-CV-04863-JST and 315-CV-04834-JST, Rebuttal Report on Underwriting and bad faith in rescission case. January 27, 2017. Deposition February 9, 2017, Skadden Arps.

Cannon Electric a/k/a ITT v. Insurers, Superior Court of the State of California. Los Angeles - Central Civil West #BC 290354, Report and deposition custom and practice relationship of tort and insurance policies, April 12, 2017, Morgan Lewis.

In re: OAKFABCO, United States Bankruptcy Court for the Northern District of Illinois, Chapter 11, Case #15-27062, Report on evidence of missing policies, appeared for asbestos victims, May 22, 2017, Supplemental Report June 27, 2017, Frank Gecker.

Eaton Corporation v. Allstate et al., The Court of Common Pleas, Cuyahoga County, Ohio, #CV-13-802476, Report multi-year policies, cost sharing and claims handling practices, defense costs, May 23, 2017, rebuttal report July 4, 2017, Deposition day one October 26, 2017, K&L Gates.

SunTrust Banks, Inc. et al., v. Certain Underwriters at Lloyd's et al., In the Superior Court of Fulton County, State of Georgia, #2014-CV-24930, D&O E&O interrelated acts, custom and practice underwriting claims handling, Report June 5, 2017, deposition August 17, 2017, King & Spalding.

First state Insurance v. ACE P&C et al., In the Court of Common Pleas Court of Montgomery County, Ohio, Civil Action 2016 CV 00697, Insurance custom and practice, umbrella and primary policies, Report for Duriron and Arrowood Indemnity Co., June 21, 2017, Deposition August 10, 2017, Littleton Joyce Ughetta Park & Kelly.

Continental Casualty Co. v. BorgWarner et al., In the Circuit Court of Cook County, Illinois county Department, Chancery Division, No. 04 CH 01 01708, Report insurance custom and practices consent and other provisions, June 22, 2017. Reed Smith and Gilbert LLP.

West Virginia American Water Company v. Starr Indemnity, USDC for the Southern District of West Virginia, Number 2:16-cv-11688, Consent to settlement reasonableness requirement, report July 3, 2017, K&L Gates.

Continental Casualty Co. v Borg Warner/York, In the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Number 04 CH 01708, Consent to defense custom and practice, Report July 3, 2017, Reed Smith.

Certain Underwriters at Lloyd's et al., v. Rockwell Automation, Superior Court of the State of California, Case No. BC327570, Custom and practice defense provisions, report August 21, 2018, Reed Smith.

Carrier Corp and Elliot Company v. Travelers et al., Supreme Court State of New York, County of Onondaga, Index No. 2005-7032, RJI No. 33-06-4408, Custom and practice regarding injury and occurrence, drafting background, misrepresentation ,prior insurance and non cumulation clauses, Report September 29, 2017, deposition November 14, 2017, affidavit January 17, 2018, Covington & Burling.

Weyerhaeuser Co. v. Certain Underwriters at Lloyd's et al., Superior Court of the State of Washington, for King County No. 16-2-01794-1 SEA, Report and declaration concerning custom and practice concerning defense costs and non-cumulation provisions at different layers of insurance November 3, 2017. Gordon Tilden Thomas & Cordell

Diocese of Duluth v. Liberty Mutual Insurance Company, et al., United States District Court for the District of Minnesota, Civil Action No.: 0:17-cv-03254-DWF-LIB, Report on the applicability of aggregate limits to non products liability losses, February 1, 2018, Blank Rome LLP.


## Congressional Testimony not all inclusive

| Date: | Testified Before: |
|---|---|
| April 28, 1977 | Subcommittee of Senate Committee on Science, Commerce & Transportation |
| June 6, 1977 | House Small Business Committee *Mass  torts |
| November 28, 1977 | House Small Business Committee |
| September 27, 1979 | Subcommittee on Consumer Protection & Finance, House Committee on Interstate & Foreign Commerce |
| | *Underwriting process |
| November 14, 1979 | Subcommittee on Consumer Protection & Finance, House Committee on Interstate & Foreign Commerce |
| April 22, 1980 | Senate Committee on Commerce, Science & Transportation * Asbestos |
| April 29, 1980 | Subcommittee on Consumer Protection & Finance, House Committee on Interstate & Foreign Commerce |
| April 9, 1981 | Commerce, Transportation & Tourism Subcommittee of the House Energy & Commerce Committee |

1984, 1985, 1986                    Multiple hearings on Superfund Re-Authorization

September 27, 1990                  Subcommittee on Policy Research & Insurance


**Publications and Journals**

"Real Competition in Health Care", letter to the editor, New York Times, March 3, 2010

"Insuring the Continued Solvency of Pharmaceutical Companies In the Face of Product Liability Class Actions," Rochelle Chodock MD, David Yolkut, and Dennis R. Connolly American Bar Association, Tort & Insurance Practice Section Journal, Spring 2005, Volume 40, Number 3, 997- 1017

Appointed to the Advisory Committee of the BNA Toxic Law Reporter, 1987

Environmental Liabilities Run with the Land – new Risks for Past Problems, M. Patricia Casey and Dennis Connolly, March 21, 1988

Appointed to the Board of Advisors, Executive Enterprises Publications, Environmental Claims Quarterly, 1988

First place Johnson & Higgins award for publications 1987, 1988, 1990

Economic Decision Processes in Mass Liability Litigation, ALI – ABA Judicial Conference Civil Practice and litigation Techniques in the federal Courts, October 13-15, 1994, Paper presented in panel Chaired by Judge Pointer.

Slain Messenger II, National Academy of Engineering, Fall 1994

"Superfund Faces an Uncertain Future", Review of Worldwide Reinsurance, February 1994

Environmental Decalogue, 1992

"Government Risk Bearing: What Works, What Doesn't", proceedings of conference held at the Cleveland Federal Reserve Bank – publisher Kluwer Academic Publishers, 1993

Comments on "Clean-up of Old Wastes Risk Analysis", Volume II, No. 1, 1993

"Superfund Whacks the Banks", Wall Street Journal op-ed page, August 28, 1990

"Structured Settlements in Environmental Litigation" (with David Miller), For the Defense, May 1990; BNA Toxics Law Reporter; April 18, 1990, American Bar Association, August 8, 1990; Insurance Law Review (Clark Boardman Callaghan publisher), 1993; anthology of best article written in the insurance law field

"Acquiring Problem Properties: Insurance Considerations", Practicing Law Institute, 1990

"Toxics TOO Risky to Insure – Yes, No, Maybe So," American Bar Association, August 8, 1989

"Superfund Insurance Coverage – Litigation Schizophrenia," BNA Toxic Law Reporter, February 10, 1990

"Environmental Liability and the Risk Retention Act", International Congress on Hazardous Waste, June 1987

"Insurance: the Case of the Slain Messenger," BNA Toxic Law Reporter, April 15, 1987

Directed and supervised production of American insurance Association's Survey of Environmental Liability Legislation & Regulations- Hazardous Substances 1982, 1984, mid year 1986

## Appointments and Distinctions

International Institute for Conflict Prevention & Resolution, Chairperson, Corporate Insurance Coverage Committee - developed mediation principles for insurer-insured disputes 2005, 2006.

American Law Institute, Principles of the Law of Aggregate Litigation - member Consultative Committee, 2005 –2011

Advisor, American Law Institute Restatement of Law Torts:  Apportionment of Liability, 1994 –2004

Consultative Committee, American Law Institute Restatement of the Law Of liability Insurance, 2014 and continuing

American Law Institute elected 1992, life member 2017

Funder Colby College Dennis R. Connolly and Eleanor C. Connolly Scholarship

Court appointed technical advisor to and co-chair of Foreign Fracture Panel – Bowling Pfizer Heart Valve Class Settlement, 1994 – 1995

Advisor, American Law Institute –Report's Enterprise Liability Study, 1987-1991

Member, Consultative Committee Restatement of Law Torts, Products Liability, 1993 – 2001

Member, National Center for Lead Safe Housing Work Group for the National Insurance Task Force, 1993 –1995

Chairman, The Wharton School Risk and Decision Process Center Advisory Committee, 1991- 1994 – member of committee, 1988-1997

Member, American Tort Reform Board of Directors and Steering Committee, 1988 – 2002, chair Legal Committee, 1989 –2001

Insurance Brokers Association of New York – Member Government Affairs Committee and Technical Task Force, 1988 –1991

Member, the Product Liability Alliance Steering Committee, 1987 –1991

Member, Associated General Contractors Energy and Environmental Committee and Hazardous Waste Committee, 1987 –1990

Member, Association of Insurance Brokers – chair Claims Committee, Member State, Federal and Environmental Committees, 1991- 1997 – chair Environmental Committee, 1994-1995

Chairman's Award National Association of Insurance Brokers, 1995

Member, National Association Insurance Commissioners Environmental Liability Insurance (D) Task Force Advisory Committee, 1989 – 1997

Member,   American Bar Association:
        Vice Chairman – Energy Resources Committee 1987-????

        Member, Special Committee on Tort Reform, Corporation, Banking and
          Business Law section, 1987 –2003
        Member, Special Environmental Liability Insurance Policy Language
          Drafting Committee, 1989 – 1991

Time qualified and ran Boston Marathon 1982, ran 12 New York Marathons

## 2007 Speeches

Panelist Mealey's Bad Faith Litigation Seminar September 25, 2007 (Philadelphia)

## 2004 Speeches

New Jersey Institute for Continuing Legal Education, "Hot Topics in Insurance Law" April 20, 2004

## 2002

ALI-ABA Seminar in London England on American Liability April, 2002

## 1996

ABA Demonstration Exercises in Florida, August 4, 1996 at invitation of Judge Robert Keeton author Keeton on Insurance.

## 1995 Speeches

J&H NY Seminar April 13, 1995

J&H Philadelphia Health Care September 20, 1995

CPCU, October 25, 1995 (Charlotte)

CPCU RIMS October 26, 1995 (Denver)

New Jersey Corporate Counsel Association, "Key Trends and Hot Issues in Environmental Insurance Coverage Litigation Allocation" (Owens, Illinois)

## 1994 Speeches

ALI-ABA, Mass Tort Panel October 5, 1994

Society for Risk Analysis and New York State Bar Association, June 28, 1994

Counsel of Insurance Brokers and Agents, BIPAR Conference May 16, 1994

PRIMA Conference February 23, 1994 (Phoenix)

## 1993, 1991, 1990, 1989, 1988 Speeches

Television – two programs "Your Premium Dollar" – FNN – presented several times

Speaker – ABA TIPS Annual Meeting Toronto Canada Seminar "How to Draft Reinsurance Contracts" August 8, 1988

Speaker – Massachusetts Bar Association June 21, 1989 (Boston)

Speaker – National Business Institute June 29, 1989 (Detroit)

Speaker – American Bar Association August 7 - 8, 1989 (Hawaii)

Speaker – Institute for International Research September 19 - 20, 1989 (New York)

Speaker – PETRO-SAFE '89 Conference October 3, 1989 (Houston)

Speaker – Canadian Council of International Law Conference "Preserving the Global Environment" October 20, 1989 (Ottawa, Canada)

Speaker – Management Center Europe Product Liability Seminar November 13 - 14, 1989 (Madrid, Spain)

German Parliament, Joint Committee on Justice and the Environment January 4, 1990 (Washington, DC)

New York Bar Association Program on Environmental Issues January 19, 1990 (New York)

American Tort Reform Association annual meeting – moderator Product Liability Issues February 9, 1990 (Washington, DC)

Boston University Law School – Liability issues in Biotechnological Research March 1990 (Boston)

Practicing Law Institute Seminar, Acquiring Problem Properties April 19, 1990 (New York)

Primex Loss Control Personnel May 10, 1990 (Philadelphia)

Seminar on hospital crisis management May 11, 1990 (Allentown, PA)

American Assembly Program on Liability and Competition May 31, 1990; June 1, 1990

ASSE Seminar Environmental June 27, 1990 (Hartford)

American Law Firm Association, Future of Insurance June 29, 1990 (San Francisco)

Rims Environmental Seminars – July 19, 1990 (Denver); November 5, 1990 (New York); November 6, 1990 (Chicago); November 8, 1990 (Los Angeles); National Pipeline Association – Liability Issues October 8, 1990 (Santa Fe, NM)

Testimony U.S. House of Representatives Banking Committee, Subcommittee on Policy, Research and Insurance September 27, 1990

Association – Liability Issues October 8, 1990 (Santa Fe, NM)

Speaker – Conference of Insurance Legislators, on insurer insolvency

Federal Reserve Bank of Cleveland – presented paper on governmental risk bearing May 30 - 31, 1991

Institutional Investor Conference on Insurance Legislation October 7, 1991

DSM Seminar managers meeting October 30, 1991

NACSA Convention February 16, 1993 (Washington DC)

Chamber of Commerce – Defense Research Institute Panel April 20, 1993 (Washington DC)

Risk and Insurance Management Society on International Environmental Liability April 28, 1993 (Orlando)

Seminar with Heller Ehrman May 17, 1993 (San Francisco)

Wharton International Forum September 11, 1993 (Philadelphia)

National Academy of Engineering Product Liability September 20 - 21, 1993 (Washington DC)

## **1977**

Speaker and panelist First World Congress on Product Liability other speakers include Ralph Nader, Melvin Belli, Robert Begham (Pres. ATLA), Frank L. Farwell (Pres. Liberty Mutual Insurance Company) and various representative of European legislators, insurers and regulators, Dr. Ralph Baldwin (Pres Oliver Machinery Company) January 19-21, 1976, London, England